UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                 :

**ALIYA NILES**,                            :

                       Plaintiff,      :

                                  :     **MEMORANDUM DECISION AND**
                                  :     **ORDER**

          – against –             :

                                  :     22-CV-6307 (AMD) (JAM)

**NEW YORK CITY HUMAN RESOURCES**     :
**ADMINISTRATION**,                             :

                                  :

                     Defendant.     :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

           The *pro se* plaintiff alleges that the defendant, her former employer, discriminated and retaliated against her on the basis of a perceived disability.  Before the Court is the defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 14.)  For the reasons that follow, the defendant's motion is granted.

## BACKGROUND

           The following facts are drawn from the plaintiff's complaint (ECF No. 2), the affidavit and exhibits filed in support of the complaint (ECF No. 3), and the affidavit filed in support of the plaintiff's opposition to the defendant's motion to dismiss (ECF No. 15 at 15–21).[1]

           The plaintiff was a caseworker for the New York City Human Rights Administration ("HRA") from April 2017 to June 2022.  (ECF No. 2 ¶ 21.)  In March 2020, after then-Mayor Bill DeBlasio declared a state of emergency, the defendant implemented policy measures to mitigate the spread of COVID-19.  (*Id.* ¶ 22.)  On October 19, 2020, the defendant updated its

---

[1] The plaintiff appears to have lifted much of the language of her complaint and affidavit from the filings in other similar cases, including *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920 (E.D. Mo. 2022), and *Johnson v. Mt. Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 U.S. Dist. LEXIS 29480 (E.D.N.Y. Feb. 22, 2023).

COVID policies and procedures to require that all HRA staff check their temperatures and complete a health screening questionnaire before "reporting to Agency work locations or conducting field work." (*Id.* ¶¶ 24–25; ECF No. 3-1.) On July 27, 2021, HRA Commissioner Steven Banks sent the plaintiff an email advising her that "starting in August and September, City employees would be required to show proof of vaccination or a weekly negative Covid-19 test" when they got to work. (ECF No. 2 ¶ 32.) On August 2, 2021, the defendant updated its policy to permit employees to remove their face masks in the workplace if they provided proof that they were fully vaccinated against COVID-19. (*Id.* ¶ 33.) The plaintiff was advised by email on September 30, 2021 that she was not in compliance with the defendant's requirement that employees must either provide proof of vaccination or submit a weekly negative PCR COVID-19 test. (*Id.* ¶ 35.)

The defendant updated its COVID policies again on October 20, 2021, requiring that all New York City employees receive at least one dose of the COVID-19 vaccine by October 29, 2021. (*Id.* ¶ 37; ECF No. 3-2.) Employees who did not submit proof of vaccination by November 1, 2021 "would be placed on [l]eave [w]ithout [p]ay." (ECF No. 2 ¶ 37; ECF No. 3-2.) The next day, the plaintiff received an email from the Department of Social Services ("DSS")[2] stating that she was "not in compliance with the City's vaccination requirement," and that she would be placed on leave without pay starting November 1, 2021 if she remained non-compliant. (ECF No. 2 ¶ 38; ECF No. 3-3.) Also on October 21, 2021, the plaintiff met with her supervisor Prima Watkins "to discuss her vaccination status" and what she needed to do to "stay in compliance." (ECF No. 2 ¶ 39.)

---

[2] HRA is an agency within DSS, which is department of the New York City government. *See* https://www.nyc.gov/site/dss/hra/hra.page (last visited Jan. 22, 2024).

On October 22, 2021, DSS informed the plaintiff by email that employees could request an "exemption from the vaccine requirement," but that "[r]easonable accommodation[s] may be granted only for documented medical and religious reasons."  (ECF No. 3-6 at 2.)  The email also listed the requirements for either a temporary or permanent medical exemption.  (*Id.*)  On October 27, 2021, DSS reminded the plaintiff by email of the October 29, 2021 deadline to submit proof of vaccination.  (ECF No. 2 ¶ 40; ECF No. 3-6 at 1.)  On the same day, the plaintiff submitted a request for a "reasonable accommodation for vaccine exemption."  (ECF No. 2 ¶ 40; *see* ECF No. 3-10 at 3.)  The next day, October 28, 2021, the plaintiff met with her supervisor Michael Sullivan to discuss the vaccine mandate; Sullivan encouraged her to get the vaccine.  (ECF No. 2 ¶ 41.)

In a November 3, 2021 letter to DSS, HRA Human Resources representative Elaine Lewis, ADR Coordinator David L. Reinman, and the HRA Office of Legal Affairs, Legal Counsel, the plaintiff stated that she refused to "waiv[e] [her] rights under the ADA" by clarifying her vaccination status, and that the inquiry into her vaccination status was "discriminatory because it classifies [her] as either 'vaccinated' or 'unvaccinated' and will [cause the defendant to] treat [her] differently based upon [her] classification."  (ECF No. 3-8 at 1; *see also* ECF No. 2 ¶¶ 42–43.)  She also claimed that placing her on leave without pay and terminating her "for the disability of being unvaccinated" was retaliatory "because [the defendant] regard[ed] [her] as disabled as a potential or actual source of COVID-19 without any individualized assessment."  (ECF No. 3-8 at 1.)  On the same day, the plaintiff mailed complaints with similar allegations of discrimination and retaliation to HRA's Equal Employment Opportunity ("EEO") Office (ECF No. 3-7 at 1, 5) and the New York District Office of the EEOC (ECF No. 3-9 at 1, 5; ECF No. 2 ¶ 44).

On April 19, 2022, the defendant's EEO Unit emailed the plaintiff asking her to provide more information about the "reasonable accommodation" she was seeking for the vaccination requirement.  (ECF No. 3-10 at 5.)  When the plaintiff did not respond, the EEO Unit sent two follow-up emails, on June 9, 2022 and June 14, 2022.  (*Id.* at 3–4.)  On June 14, 2022, the plaintiff responded that she was complaining about "discrimination [and] retaliation," but did not clarify what, if any, accommodation she sought.  (*Id.* at 3.)

On June 24, 2022, DSS Senior Deputy Commissioner Denita Williams advised the plaintiff by letter that she had been placed on leave without pay for noncompliance with the vaccination policy and that she was at risk of termination.  (ECF Nos. 3-11, 3-12, 3-13.)  On the same day, the plaintiff asked the EEO Unit in an email why she received the letter, claiming that she "submitted a reasonable accommodation for vaccine exemption because of disability."  (ECF No. 3-10 at 3.)  Athina McBean, the Executive Director/EEO Officer for HRA, responded that the plaintiff's request had been a "complaint of discrimination and retaliation," as the plaintiff had said in her June 14, 2022 email.  (*Id.* at 2.)  The plaintiff replied that she submitted a request for a reasonable accommodation "for vaccine exemption" on the basis of disability, along with a letter for the defendant's assessment.  (*Id.*; ECF No. 3 ¶ 44.)  McBean responded that a medical exemption request required "documentation from a medical provider that details why you are unable to take the [COVID-19] vaccine."  (ECF No. 3-10 at 1.)  The plaintiff asked McBean how she could speak confidentially with her HR representative "for matters involving Title I of the [ADA] and grievances."  (*Id.*)  McBean said that the plaintiff could file a discrimination complaint, but explained again that a request for exemption from the vaccine mandate for medical reasons required "documentation from your medical provider."  (*Id.*)

On June 30, 2022, Williams sent the plaintiff a letter terminating her employment, effective the same day.  (ECF No. 3-12 at 2–3.)

The plaintiff filed this lawsuit on September 25, 2022, claiming discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA").  She alleges that the defendant improperly "regard[ed] [her] as disabled by classifying [her] as a potential or actual source of COVID-19," and "as impaired in [her] immune system and . . . [her] respiratory system," because she is unvaccinated from COVID-19.  (ECF No. 2 ¶ 83; ECF No. 3 ¶ 2; ECF No. 3-8 at 2.)  The defendant also "made a record of" this "impairment" by "documenting [the] plaintiff's 'vaccination status.'" (ECF No. 2 ¶ 117.)  As a result, the plaintiff contends, the defendant "impose[d]" "accommodations" upon her, including, for example, mandatory health screenings, masking requirements, and a COVID-19 vaccination requirement.  (*Id.* ¶¶ 3, 11–13.)  Because the plaintiff "refus[ed] to accept [the] accommodations" (*id.* ¶ 126), the defendant subjected her to the adverse employment actions of "den[ying] her equal access to the premises" (*id.* ¶ 19), "exclud[ing] and relegat[ing her] to lesser services" (ECF No. 3-9 at 3), placing her on leave without pay (ECF No. 2 ¶ 119), and ultimately terminating her employment without "conduct[ing] any individualized assessment" (*id.* ¶ 20; ECF No. 3-9 at 3).  The plaintiff also claims that the defendant treated her differently than vaccinated employees and unvaccinated employees with medical or religious exemptions, and that the defendant's COVID-19 policies did not include any provisions for employees with disabilities.  (ECF No. 2 ¶¶ 73, 79–80.)  Additionally, the plaintiff claims that the defendant retaliated against her because of her good faith refusal to comply with its COVID-19 policies through "punitive measures" and adverse employment actions.  (ECF No. 2 ¶ 20.)

The plaintiff claims both that she is actually disabled (*id.* ¶ 148 (the plaintiff "[gave] notice of a disability and was therefore in a protected class and engaged in a protected activity")), and that the defendant improperly characterized her as having a disability (*id.* ¶ 122 (the defendant "[made] a record of [a] disability by mis-classifying the plaintiff as having an impairment which needed to be treated or cured by the defendant's 'Covid-19 Policy'")).  The plaintiff also alleges that the defendant discriminated and retaliated against her for her good faith refusal to comply with its COVID-19 policies.  (*Id.* ¶¶ 19–20, 138.)  She seeks the following relief: "a judgment . . . that [the] defendant's actions were unlawful," back pay, compensatory damages, "reinstatement, or in the alternative front pay in the event reinstatement is not practical," liquidated damages, costs and reasonable court fees, punitive damages, and pre- and post-judgment interest.  (*Id.* at 22, 26.)

On March 31, 2023, the defendant moved to dismiss the complaint for failure to state a claim upon which relief may be granted.  (ECF No. 14.)  The plaintiff opposed on April 17, 2023 (ECF No. 15), and the defendant replied on May 15, 2023 (ECF No. 17).

## LEGAL STANDARD

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint fails to state a claim "if it tenders naked assertions

devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and alterations omitted).

Because the plaintiff is proceeding *pro se*, the Court construes her complaint liberally and evaluates it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (citations omitted).

## DISCUSSION

### I.    The Defendant Is Not a Proper Party

The defendant argues that the plaintiff's claims must be dismissed because the Human Resources Association is an agency of the City of New York and cannot itself be sued. (ECF No. 14-1 at 3.) The plaintiff did not address this point in her opposition; therefore, she has effectively conceded the argument. (ECF No. 17 at 1.) *See, e.g.*, *Ventillo v. Falco*, No. 19-CV-3664, 2020 U.S. Dist. LEXIS 239540, at *33 (S.D.N.Y. Dec. 18, 2020) ("As [the p]laintiff did not respond to [the d]efendants on th[ese] points, he effectively conceded the argument by his failure to respond." (cleaned up) (citation omitted)); *Newell v. State Univ. of N.Y. Westchester Cmty. Coll.*, No. 22-CV-8524, 2023 U.S. Dist. LEXIS 105901, at *9 (S.D.N.Y. June 20, 2023) (same).

In any event, the Human Resources Association, an agency of the City of New York, is not a suable entity. *See* N.Y.C. Charter § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) ("New York City departments, as distinct

from the City itself, lack the capacity to be sued." (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)); *see also Strujan v. Office of N.Y. State Governor*, No. 17-CV-1566, 2020 U.S. Dist. LEXIS 88078, at *4–5 (E.D.N.Y. May 19, 2020) (explaining that the New York City Human Resources Administration is not a suable entity); *Greene v. Pryce*, No. 15-CV-3527, 2015 U.S. Dist. LEXIS 86603, at *4 (E.D.N.Y. July 1, 2015) (same). Instead, any claims against HRA must be brought against the City of New York, and the plaintiff's claims against HRA must be dismissed.

Even if the Court construes the complaint to be against the City of New York, the plaintiff does not state any claim upon which relief may be granted.

## II.    Discrimination

Congress enacted the ADA to provide a "clear and comprehensive national mandate to eliminate discrimination against . . . individuals [with disabilities], and to integrate them into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (cleaned up) (citations omitted). "To effectuate its sweeping purpose," the law seeks to root out disability discrimination in various facets of public life, including housing, employment, transportation, communication and recreation. *Id.* at 675; *see also* 42 U.S.C. § 12101(a)(3).

In the employment context, a plaintiff claiming disability discrimination under the ADA must allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); *Williams v. N.Y.C.*

*Dep't of Educ.*, No. 18-CV-11621, 2020 U.S. Dist. LEXIS 32403, at *8–9 (S.D.N.Y. Feb. 25, 2020).

Under the ADA, a "disability" is: "(A) a physical or mental impairment that substantially limits one or more major life activities of . . . an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

The defendant argues that the plaintiff has not established that she has a record of disability or that the defendant regarded her as having a disability. (ECF No. 14-1 at 5.)

### a.      Record of Impairment

The plaintiff alleges that the defendant made a record of her disability—which she does not identify—by misclassifying her as being "impaired by a contagious disease" and "by a suppressed or weak immune system or respiratory system that makes [her] vulnerable to 'Covid-19'" because she is unvaccinated. (ECF No. 2 ¶¶ 116–17, 119.) EEOC regulations provide that a plaintiff has a record of disability if the plaintiff has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. 1630.2(k)(1). Consistent with those regulations, the Second Circuit has held that to form the basis for an ADA claim, the "record of" disability "must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 645 (2d Cir. 1998).

The plaintiff does not plausibly allege that the defendant discriminated against her based on a "record of" her disability within the meaning of the ADA. First, as this Court and other

courts have found, a plaintiff's vaccination status is not a disability. The plaintiff cites no authority to support that position, nor is the Court aware of any. The decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses. *Speaks v. Health Sys. Mgmt.*, No. 22-CV-77, 2022 U.S. Dist. LEXIS 146840, at *13 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [the plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA."); *cf. Berquist v. Lynch*, No. 14-CV-295, 2015 U.S. Dist. LEXIS 109844, at *11 (E.D. Wash. Aug. 14, 2015) ("An individual suffers a disability when a physical or mental impairment substantially limits one or more major life activities. Neither party gets to choose when a disability begins." (citing *Bragdon v. Abbott*, 524 U.S. 625, 641 (1998))).

As the plaintiff appears to acknowledge, the defendant regarded her refusal to be vaccinated as a threat to the health and safety of patients and other employees at a time when the COVID-19 virus was spreading rapidly in New York. (*See* ECF No. 2 ¶ 85 "[T]he defendant openly admitted that the purpose of such policy was the prevention of the spread of 'Covid-19.' The defendant's 'Covid-19 Policy' regarded the plaintiff as having 'Covid-19' or being prone to getting infected with 'Covid-19.' All mitigation measures flowed from this premise . . . .").) But "Congress enacted the ADA to prevent workplace discrimination against employees with disabilities; it is not a device to police the general 'scope of the employer-employee relationship.'" *Johnson v. Maximus Servs. LLC* ("*Johnson II*"), No. 22-CV-2935, 2023 U.S. Dist. LEXIS 153459, at *10 (E.D.N.Y. Aug. 30, 2023).

Moreover, the plaintiff acknowledges that the vaccination policy applied to all employees and that it was implemented to prevent the spread of COVID-19. (ECF No. 2 ¶ 2 ("The

defendant admits that its 'Covid-19 Policy' is intended to prevent the spread of 'Covid-19,' which it describes as a deadly contagious disease."); *see also* ECF No. 3-6 (email explaining the vaccine mandate is "FOR ALL NYC EMPLOYEES").)  According to the plaintiff, the blanket policy is evidence that the defendant misclassified all employees as having an impairment.  (*See, e.g.*, ECF No. 2 ¶ 2 ("The policy rests on the assumption that every employee, the plaintiff included, has or could have this disease."), ¶ 3 ("The [policy] imposed these measures upon all of [the defendant's] workers without considering the individualized medical assessment of each employee's health or whether the policies were appropriate for the working population."), ¶ 84 ("[T]he policy's underlying assumption was that all of its employees were simultaneously at risk and also posed a risk to the health of all other employees.").)

        Other courts have rejected this argument, with good reason.  "[I]nferring that [the defendant] classified [the plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption" for qualifying employees.  *Speaks*, 2022 U.S. Dist. LEXIS 146840, at *11–12; *see also, e.g.*, *Johnson v. Mt. Sinai Hosp. Grp., Inc.* ("*Johnson I*"), No. 22-CV-2936, 2023 U.S. Dist. LEXIS 29480, at *11–12 (E.D.N.Y. Feb. 22, 2023); *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 925–26 (E.D. Mo. 2022).  Indeed, by acknowledging that the defendant's policy applied to all employees, the plaintiff also concedes that the defendant did not treat her differently than it treated other employees, which is a required element of an ADA discrimination claim.  *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (a plaintiff must show disparate treatment or disparate impact to state a discrimination claim under the ADA).

As noted above, it is not clear whether the plaintiff is arguing that she actually had a disability, aside from her refusal to be vaccinated.  She states that she requested reasonable accommodations from the COVID-19 policy based on a disability, but she does not specify—in her complaint or in the exhibits showing her communications with the defendant—what disability she has.  Nor does she claim that she has been diagnosed with a disability, or that there are medical records documenting the conditions.[3]  Even if she had alleged a disability, she does not allege any specific facts plausibly suggesting that her impairment substantially limited one or more major life activities, as is required by the statute.  Instead, the plaintiff alleges that the COVID-19 policy caused a "materially adverse change in the terms and conditions of [her] employment" by "substantially alter[ing] the manner in which she was able to do her job and interact with co-workers" and "impairing her ability to perform her essential employment duties."  (ECF No. 2 ¶¶ 154–55.)  She also alleges that her impairment, caused by the COVID-19 policy's "mitigation measures," "substantially limit[ed] [her] ability to engage in one or more major life activities, such as working, communicating with others, caring for oneself, breathing, etc."  (ECF No. 2 ¶ 101.)  The plaintiff also alleges that she "felt intimidated and coerced to submit to medical inquiries and treatments that she does not want to partake in."  (*Id.* ¶ 23.)

---

[3] Rather, the plaintiff alleges that the defendant regarded her as having the "disability" of being impaired by COVID-19 or being vulnerable to being impaired by COVID-19.  (ECF No. 2 ¶¶ 116, 119, 123–24.)  In other words, the plaintiff seemed to think that the defendant regarded her as having a disability because she was unvaccinated, and she asserted that same disability as justification for reasonable accommodations from the vaccination policy.  But as explained above, being unvaccinated is not a disability.  It is a choice that the plaintiff made.

Although in one of her June 24, 2022 emails to McBean and the EEO Unit, the plaintiff said that she attached a letter to her reasonable accommodation request that "specif[ied] everything," and that she intended "for assessment" (ECF No. 3-10 at 2), she does not allege that she provided medical records of a disability or that she requested any accommodation, other than permitting her to remain unvaccinated, without masking or submitting negative COVID tests.

As previously explained, being unvaccinated is not an impairment.  But even drawing all inferences in the plaintiff's favor, these allegations do not establish that her major life activities were substantially limited because of the defendant's record of her "impairment."  *Baluch v. 300 W. 22 Realty, LLC et al.*, No. 21-CV-9747, 2023 U.S. Dist. LEXIS 2092, at *13–14 (S.D.N.Y. Jan. 5, 2023) ("Allegations that 'merely track the language of the statute' or '[v]ague, conclusory assertions without details on how [a plaintiff's] condition actually affects a major life activity are insufficient' to survive a motion to dismiss." (quoting *Cain v. Mandl Coll. of Allied Health*, No. 14-CV-1729, 2017 U.S. Dist. LEXIS 96917, at *7–8 (S.D.N.Y. June 22, 2017))).

Nor does the plaintiff make any "showing that [her] affliction is any worse than is suffered by a large portion of the nation's adult population," let alone by her own coworkers, who are also subject to the policy.  *Fitzgerald v. We Co.*, No. 20-CV-5260, 2022 U.S. Dist. LEXIS 59036, at *23 (S.D.N.Y. Mar. 30, 2022) (quoting *Colwell*, 158 F.3d at 644); *cf. Konieczny v. N.Y. State Div. of Parole*, 647 F. Supp. 2d 256, 261 (W.D.N.Y. 2009) ("[T]he ADA 'requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002))).

Therefore, the plaintiff does not make the threshold showing that she was disabled under the "record of" prong of the ADA.  *See, e.g.*, *Mone v. N.Y. State Unified Ct. Sys.*, Nos. 21-CV-6914, 21-CV-6915, 2023 U.S. Dist. LEXIS 107595, at *25 (E.D.N.Y. Mar. 22, 2023) (dismissing the plaintiff's "record of impairment" claim where the plaintiff did not allege "any details supporting how the alleged impairments substantially limit[ed] any major life activities" (citations omitted)), *report and recommendation adopted by* 2023 U.S. Dist. LEXIS 106616

(E.D.N.Y. June 20, 2023); *Apuzza v. NYU Langone Long Isl.*, No. 22-CV-7519, 2023 U.S. Dist. LEXIS 230869, at *15 (E.D.N.Y. Dec. 29, 2023) (same).

Accordingly, the allegations in the plaintiff's complaint are not sufficient to sustain an ADA claim on the basis that the defendant kept a record of her impairment.

### b.    Regarded as Having a Disability

For similar reasons, the plaintiff also does not plausibly allege that the defendant "regarded her" as disabled.  A plaintiff is "regarded as" having a disability if she "establishes that . . . she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).

The plaintiff alleges that the defendant's vaccination policy demonstrates that it "regarded her" and others who were not vaccinated as "impaired by a contagious disease," and "by a suppressed or weak immune system or respiratory system that makes them vulnerable to 'Covid-19.'"  (ECF No. 2 ¶ 116; ECF No. 15 at 2.)  But this is nothing more than a claim that by adopting the policy, the defendant regarded unvaccinated employees as susceptible to COVID-19—that is, "at risk of developing COVID-19 *in the future*."  *Williams-Moore v. Quick Int'l Courier, LLC*, No. 22-CV-3592, 2023 U.S. Dist. LEXIS 171875, at *10 (quoting *D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 U.S. Dist. LEXIS 33343, at *12 (S.D.N.Y. Feb. 28, 2023)).  The ADA's prohibition on discrimination based on perceived disability applies only when the employer "regards" the employee as "having . . . an impairment."  42 U.S.C. § 12102(1)(C).  Consistent with that language, "every circuit court that has addressed the issue has concluded that the ADA does not prohibit discrimination based on *future* impairment." *D'Cunha*, 2023 U.S. Dist. LEXIS 33343, at *13 n.5 (collecting cases).  Because the vaccination requirement suggests at most that the defendant regarded unvaccinated employees as susceptible

to COVID-19, that requirement does not raise a plausible inference that the defendant regarded those employees as disabled.

To the extent that the plaintiff means to argue that the defendant regarded her as disabled because it regarded her as having COVID-19, that claim also fails. Under the ADA, individuals are not "disabled" when they have conditions that are "transitory and minor," or conditions with "an actual or expected duration of [six] months or less." 42 U.S.C. § 12102(3)(B); *see also* Margaret C. Jasper, Legal Almanac: The Americans With Disabilities Act § 2.5 (2012) ("[A]n individual with epilepsy, paralysis, HIV infection, AIDS, a substantial hearing or visual impairment, mental retardation, or a specific learning disability is covered, but an individual with a minor, non-chronic condition of short duration, such as a sprain, broken limb, or the flu, generally would not be covered . . . . This employee is not protected by the ADA because, although he is 'impaired,' the impairment does not substantially limit a major life activity because it is of limited duration and will have no long-term effect.").

Moreover, as explained above in rejecting the plaintiff's "record of a disability" claim, no reasonable employer would institute a policy that would cause it to regard all its employees to "[have] impairments that substantially limited their ability to perform major life activities." *Williams-Moore*, 2023 U.S. Dist. LEXIS 171875, at *10. (*See* ECF No. 15 at 2 (the defendant's policy "is based upon the premise that everyone might have a deadly contagious disease," i.e., COVID-19).) That is especially true in this context, because "vaccines are designed to prevent illness, rather than to treat it." *Id.*

Accordingly, the plaintiff does not plausibly allege that the defendant regarded her as disabled. *See id.* at *11 (collecting cases holding that "an employer's imposition of a COVID-19

vaccination requirement does not raise a plausible inference that the employer regarded all its

employees (or its unvaccinated employees) as disabled within the meaning of the ADA).

## III.     Retaliation

"To state a claim for ADA retaliation, 'a plaintiff must allege that: (1) [she] engaged in

an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer

took an adverse employment action against [her]; and (4) a causal connection exists between the

alleged adverse action and the protected activity.'"  *Robles v. Medisys Health Network, Inc.*, No.

19-CV-6651, 2020 U.S. Dist. LEXIS 109115, at *37–38 (E.D.N.Y. June 19, 2020) (quoting

*Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)).  The plaintiff

alleges that "[u]pon giving [the] defendant notice that she was regarded as having a disability

and that she was a qualified individual with a disability, the defendant began retaliating against

[her]."  (ECF No. 2 ¶ 138.)  She alleges that the defendant "impos[ed] punitive measures and

adverse employment actions"—including "isolation and medical examinations, barring her from

the workplace, withholding her pay, and ultimately terminating her employment"—because of

"her good faith refusal to participate in the defendant's offered accommodations," i.e., the

COVID-19 "mitigation measures."  (*Id.* ¶¶ 20, 138.)

According to the defendant, the plaintiff's termination in June 2022 was too far removed

in time from her EEO complaint about the COVID-19 policy, which she made more than seven

months earlier on November 3, 2021.  (ECF No. 14-1 at 7 (citing ECF No. 2 ¶ 21; ECF No. 3-

7).)  The defendant also argues that the plaintiff's placement on leave without pay was

"completely unrelated to her EEO complaint;" rather, she was placed on leave because she did

not comply with the policy.  (*Id.*)

The plaintiff does not show a causal connection between her EEO complaint and her

termination.  While the plaintiff was terminated because she refused to comply with the

defendant's COVID-19 policies, the defendant adopted its policies before the plaintiff

complained to the EEOC.  The defendant first implemented policies and procedures to mitigate

the spread of COVID-19 in March 2020.  (ECF No. 2 ¶ 22.)  On October 19, 2020, the defendant

began requiring employees to "complete a health screening" before coming to work.  (*Id.* ¶ 25.)

On July 27, 2021, the defendant announced a requirement that employees "would be required to

show proof of vaccination or a weekly negative COVID-19 test" when they came to work.  (*Id.*

¶ 32.)  The defendant adopted a mandatory vaccination requirement in October 2021 after the

City announced a vaccine mandate.  (*Id.* ¶ 37.)  It was not until after the defendant implemented

its vaccine mandate that the plaintiff complained that she was being regarded as disabled.

(*Compare id.* (the defendant required employees to submit proof of vaccination by November 1,

2021), *with id.* ¶¶ 42–44 (the plaintiff mailed her EEO complaints to her Human Resources

representative, the HRA Office of Legal Affairs, the ADR representative, and the New York

EEOC office on November 3, 2021); *see also* ECF Nos. 3-7, 3-8, 3-9.).  Therefore, the plaintiff

cannot show that her complaint led to the institution of the policy, or to her termination.

Accordingly, the plaintiff has not sufficiently alleged a causal connection between the so-

called "protected activity" and the adverse action.  *See Shklyar*, 616 F. Supp. 3d at 927 ("Given

that the adverse action taken against [the plaintiff] was taken pursuant to policies that were

implemented before [the plaintiff] engaged in her alleged protected activity, it is not reasonable

to infer that there was a causal connection between the two events."); *Speaks*, 2022 U.S. Dist.

LEXIS 146840, at *14–15 ("[I]t is clear that the policy—which was undisputedly the grounds for

[the plaintiff's] termination when she chose to remain unvaccinated—was enacted *before* [the

plaintiff] spoke up in opposition to the vaccination requirement.  Therefore, it is not reasonable

to infer that there was a causal connection between her criticism of the policy and her

termination."); *Johnson I*, 2023 U.S. Dist. LEXIS 29480, at *21–22 (applying same).  The retaliation claim is dismissed.

**IV.    Additional ADA Claims**

The plaintiff makes three additional arguments, unrelated to her discrimination or retaliation claims, about the defendant's COVID-19 policies violate the ADA.

First, the plaintiff argues that the defendant should have conducted an "individualized assessment" to determine whether her refusal to vaccinate posed a "direct threat to the health of [her] co-workers."  (ECF No. 2 ¶ 2, 109, 112–13.)  The plaintiff cannot succeed on this argument.  The ADA provides a defense for employers against allegations that "an application of qualification standards, tests, or selection criteria . . . screen[s] out or tend[s] to screen out" individuals with disability, permitting them to show that the qualification standard "include[s] a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace."  42 U.S.C. § 12113(a)-(b).  This "direct threat" provision does not impose an affirmative duty on employers; it simply provides a defense for employers once a plaintiff has established that she has a disability.  42 U.S.C. § 12113(b).  Because the plaintiff did not "allege facts showing that she is an individual with a disability," the direct threat provision is "inapplicable" in this case.  *Librandi v. Alexion Pharms., Inc.*, No. 22-CV-1126, 2023 U.S. Dist. LEXIS 103158, at *31 (D. Conn. June 14, 2023) (cleaned up); *see also Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 291–92 (N.D.N.Y. 2023).  "In any event, it would have been reasonable for [the defendant] to conclude that unvaccinated employees—who are more likely to become infected—pose a direct threat to patients and others."  *Johnson II*, 2023 U.S. Dist. LEXIS 153459, at *12–13 (quoting *Together Emps. v. Mass Gen. Brigham, Inc.*, 573 F. Supp. 3d 412, 433 (D. Mass. 2021)); *see also W. v. Scott Labs., Inc.*, No. 22-CV-7649, 2023 U.S. Dist. LEXIS 50697, at *9–10 n.7 (N.D. Cal. Mar. 24, 2023) (similar).

Second, the plaintiff argues that the defendant's vaccine mandate violated the ADA by "requir[ing] non-job-related medical examinations . . . that were not consistent with any conceivable business necessity," including "disclosing private medical records[,] medical history[,] and . . . vital statistics, like body temperature" and requiring the plaintiff to "submit[] to medical tests."  (ECF No. 2 ¶¶ 87, 89–90; *see also* ECF No. 15 at 1, 12.)  According to the plaintiff, the medical treatments and inquiries include "taking experimental vaccines; wearing a surgical mask over the face; engaging in 'social distancing;'" and requiring the plaintiff to "waive her rights to medical privacy, informed consent, and rights protected under the ADA." (ECF No. 2 ¶¶ 75, 91.)  The plaintiff argues that these requirements violated the ADA's prohibition on inquiries "as to whether such employee is an individual with a disability or as to the nature or severity of the disability."  (ECF No. 2 ¶ 88 (citing 29 C.F.R. § 1630.13(b)).)

The ADA generally forbids employers from asking questions that are "likely to elicit information about a disability" and from requiring employees to undergo medical procedures "that seek[] information about [their] physical or mental impairments or health."  *Sharikov*, 659 F. Supp. 3d at 288 n.8 (citations omitted); *see also* 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.13(b).  "[W]hether a particular examination or inquiry falls within [this statute] depends on whether it 'may tend to reveal a disability.'"  *Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 294 (N.D.N.Y. 2003) (quoting *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 95 (2d Cir. 2003)).  The only things the defendant's policy could reveal were the plaintiff's vaccination status or a temporary COVID-19 infection, neither of which is a disability under the ADA.  *See supra* Part II.b; 42 U.S.C. § 12102(3)(B).  Courts have routinely reached the same conclusion when considering similar challenges to employers' COVID-19 policies.  *See Apuzza*, 2023 U.S. Dist. LEXIS 230869, at *21–22 (collecting cases).  The ADA's legislative history,

which the plaintiff describes, does not undermine those courts' conclusions.  (*See generally* ECF No. 15.)

Even if the defendant's policy required disability-related examinations or inquiries, the ADA permits "such examination or inquir[ies]" as long as they are "job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  The defendant's efforts to prevent the spread of a highly transmissible disease in its workplace and in employees' fieldwork sites, and to adhere to federal COVID-19 guidance, plainly fall within that exception.  *See Sharikov*, 659 F. Supp. 3d at 290.

Third, the plaintiff summarily argues that the defendant's COVID-19 policy "violates 29 C.F.R. § 1630.14(c) of the ADA because it involves sharing non-job-related medical classifications (e.g. 'vaccination status,' vital statistics and 'PCR' testing history) without any regard to confidentiality."  (ECF No. 2 ¶ 98.)  Regulations interpreting the ADA provide that information obtained through required medical examinations or inquiries "shall be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record."  29 C.F.R. § 1630.14(c)(1).  The plaintiff's argument that the policy violates this regulation fails because, as noted above, information about vaccine status is not a disability-related inquiry or medical examination as a matter of law.  Additionally, as discussed above, the plaintiff did not "suffer from a disability within the meaning of the ADA," so "the ADA's non-disclosure duty was not triggered."  *Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 334 (N.D.N.Y. 2010); *see also, e.g.*, *Mendoza v. J.M. Smucker Co.*, No. 22-CV-2281, 2023 U.S. Dist. LEXIS 90231, at *18–19 (N.D. Ohio May 22, 2023) (finding that the employer's public segregation of its employee based on her refusal to receive COVID-19 vaccine did not violate

medical privacy requirements under the ADA because information regarding the employee's COVID-19 vaccine status was not a disability-related inquiry).

These claims are therefore dismissed.

## V.   Punitive Damages

The defendant argues that the plaintiff's claims for punitive damages must be dismissed because, as an agency of the City of New York, it is immune from such relief.  (ECF No. 14-1 at 8.)[4]  Since the Court is dismissing the complaint, the plaintiff is not entitled to damages of any kind, including punitive damages.  In any case, "punitive damages are unavailable against municipal defendants."  *Piotrowski v. Rocky Point Union Free Sch. Dist.*, 462 F. Supp. 3d 270, 288 (E.D.N.Y. 2020) (citing *Ciraolo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000)).

---

[4] The plaintiff did not respond to this claim, so she has conceded the argument.  (ECF No. 17 at 1.)  *Ventillo*, 2020 U.S. Dist. LEXIS 239540, at *33.

**CONCLUSION**

Accordingly, the defendant's motion to dismiss is granted.

Although courts in this circuit are generally reluctant to dismiss a *pro se* plaintiff's action without permitting leave to amend, it is appropriate to do so "[w]here it appears that granting leave to amend is unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). There is nothing in the complaint to suggest that the plaintiff could state a cognizable claim for relief, and thus granting leave to amend would be futile. Accordingly, the action is dismissed with prejudice, and the Clerk of Court is directed to close this case.


**SO ORDERED.**

　　　　　　　　　　　　　　s/Ann M. Donnelly

　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　ANN M. DONNELLY
　　　　　　　　　　　　　　United States District Judge


Dated: Brooklyn, New York
　　　　　February 7, 2024